# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| JOHN-TALMAGE MATHIS | CIVIL ACTION NO. 11-2199 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| PINNACLE ENTERTAINMENT, INC., ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Mr. Mathis, a former employee of Boomtown Casino, brings this suit alleging FMLA violations arising out of the termination of his employment.  Before the Court is a Motion for Summary Judgment [Record Document 35] filed by Defendants Pinnacle Entertainment, Inc. and PNK, Inc. (doing business as "Boomtown" and "Boomtown Casino - Bossier City," respectively, and both hereinafter referred to as "Boomtown"), Tracey Page, and Kimberly Haigh.  Ms. Page and Ms. Haigh are both Boomtown employees.  For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment [Record Document 35] and **DISMISSES with prejudice** Mr. Mathis' claims against Defendants.

## I.    Factual and Procedural Background[1]

Mr. Mathis appears pro se.  His pleadings are somewhat confused, so it is necessary to carefully review the facts in order to determine the nature of his claims.

---

[1] Unless otherwise noted, the following narrative is taken from those portions of Defendants' statement of undisputed facts that Mr. Mathis has not genuinely disputed.

**A.     The Facts**

Mr. Mathis was hired by Boomtown as a Player Development Coordinator on March 23, 2010.   On April 12, 2011 he informed his supervisor, Ms. Zablonski, that his back had been injured in a work-related accident and that he would not be able to come to work on April 13.  On April 13, he notified Ms. Zablonski that he did not intend to return to work until April 14.  And on April 15, he stated that he needed the weekend to rest, but that he anticipated returning to work next week.  Ms. Zablonski attempted unsuccessfully to contact Ms. Mathis by telephone.  She sent an email message to his personal and business email addresses informing him that he would need to come to Boomtown to fill out an accident report about his injury no later than April 18.  Ms. Haigh also advised Mr. Mathis that he needed to complete paperwork for his injury no later than April 18.  Mr. Mathis did not fill out the required paperwork, but on April 18 he contacted Ms. Haigh and informed her that he had tried to meet with her on April 17, Easter Sunday, but that she was not in the office.

Mr. Mathis did not return to work, so on April 21, Tracey Page, the Risk Human Resources Manager, sent a letter to Mr. Mathis advising him that Boomtown had still not heard from him, asking him to come to the office to file the necessary paperwork regarding his injury, and advising him that if he did not contact Boomtown by May 1 he would be considered to have voluntarily resigned.  On May 5, after the deadline passed without word from Mr. Mathis, Ms. Page sent another letter by regular and certified mail warning Mr. Mathis that if he did not respond by May 13, he would be considered to

2

have voluntarily resigned.

On May 13, Mr. Mathis contacted Boomtown and requested leave under the Family Medical Leave Act ("FMLA").  29 U.S.C. § 2601 et seq.  Ms. Page informed him that if he wanted FMLA leave, he would have to return a completed FMLA medical certification.  She emailed and mailed, via regular and certified mail, FMLA certification forms to him with instructions to return them within fifteen days after their completion by a physician.  Mr. Mathis neither returned to work nor provided the requested FMLA certification.[2]  On June 6, 2011, Boomtown informed him that he had been terminated for violating the attendance policy.

Mr. Mathis apparently filed a worker's compensation claim regarding his injury. Defendants have filed the compromise agreement executed by Mr. Mathis and Boomtown in which he agrees to settle his worker's compensation claim as well as the following other claims:

> any and all causes and rights of action whatsoever that EMPLOYEE may or might have and to which EMPLOYEE may be entitled, known and unknown, anticipated and unanticipated under the Louisiana Worker's Compensation Law . . . and any and all other laws in any way resulting from or to result from the accidents that EMPLOYEE complains of herein and any and all other accidents sustained by EMPLOYEE in the past arising out of or occurring during the course of his employment with EMPLOYER . . .

[Record Documents 35-8, p.7].  The compromise also includes the following handwritten

---

[2] Mr. Mathis claims, without support, that he submitted a response that "contained the specifics of the legal requirements of what constitutes a medical certificate under FMLA."  [Record Document 40-1, p.3].  He also claims, without supporting evidence, that he responded to Defendants' previous repeated attempts to contact him.  Id. at 2-4.

3

addition: "with employee to reserve rights to EEOC claims and unemployment claims."
Id.

Mr. Mathis appears to have also attempted unsuccessfully to obtain unemployment benefits.  The details are not clear, but he alleges that the unemployment court initially found that Boomtown's stated reason for termination, namely that he voluntarily resigned, did not disqualify him from receiving unemployment benefits.  [Record Document 1, p.4].  Mr. Mathis alleges, however, that Boomtown subsequently "amended there [sic] Complaint spontaneously on the day of the hearing" to state that he "was terminated for FMLA paperwork not being received on time," and that "[t]his allegation disqualified [him] from receiving Unemployment Benefits."  Id. at 3.  The ALJ then held that he was disqualified from receiving unemployment benefits. He appealed the decision, but the Louisiana Board of Review upheld it on the grounds that his failure to follow Boomtown's leave requirements constituted misconduct connected with employment under La. R.S. 23:1601(2).  [Record Document 35-10, pp. 16-18].  He has since filed a petition in Louisiana State Court to review the Board of Review's decision.  Id. at 1-2.

**B.    Mr. Mathis' Claims**

Read liberally, Mr. Mathis' pleadings state the following claims.  He first asks this Court to review the ALJ's decision that he was disqualified from receiving unemployment benefits.  The extent of review he requests is unclear.  At times, he appears to seek review of the entirety of the substantive and procedural rulings made by the state

4

agency:

> the Complaints [sic] herein are submitted for the Court to determine
> whether the Claim made by BOOMTOWN to the Unemployment Court is in
> fact a true Complaint and merits the actions taken by BOOMTOWN and the
> Unemployment Court.  BOOMTOWN amended there [sic] Complaint
> spontaneously on the day of the hearing.  This last minute Complaint,
> which did not provide time for a true defense, declared that MATHIS was
> terminated for FMLA paperwork not being received on time.

[Record Document 1, p.3].  At times, he appears to seek only a ruling on only "the

FMLA issue:"

> Instead of the FMLA issue, let's replace this with a charge of
> 'embezzlement', 'rape', 'murder', or 'counterfeit.'  Each is a violation of law
> beyond the scope of a telephonic tribunal judge.  FMLA is a federal law
> enacted by Congress.  Thus, this Court, a federal court, is the 'appropriate
> forum' for this matter.

[Record Document 40, p.3].  When he uses the term "the FMLA issue," Mr. Mathis

appears to refer to the question of whether he complied with the statutory and

regulatory requirements for obtaining FMLA leave and whether Boomtown violated the

FMLA by terminating his employment.

Mr. Mathis also lodges FMLA claims that are separate from his claim for

unemployment benefits.  He alleges that Defendants discriminated and retaliated against

him when they fired him after he requested FMLA leave.  [Record Document 1, pp. 7-8].

He also alleges that the Boomtown employees interfered with his attempts to take FMLA

leave.  While some of the allegations in his complaint give the impressing that he is also

bringing a discrimination claim under the ADA, he expressly disclaims any such

intention:

> MATHIS suffers from a disability—narcolepsy . . . MATHIS has filed a disability complaint with the EEOC and has been in contact with this Agency to determine if the discrimination claim will be investigated, handled, or mediated by the EEOC.  This Complaint herein does not address the disability discrimination.

Id. at 3.  Accordingly, the Court will disregard Mr. Mathis' occasional references to his disability discrimination claim.[3]

## II.    Summary Judgment Standard

Summary Judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating that summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden of persuasion on the claim at issue, it may meet its burden of

---

[3] In his opposition, Mr. Mathis moves to amend his complaint to add an ADA claim he previously filed in a separate suit:

> Docket Number 5:13-cv-630 is discussed. For a multitude of reasons, I am unaware of its status.  The Defendant states that it has been dismissed for my failure to serve the defendants.  What a shame.  Upon Ms. Nowell's advice, service to defendants were [sic] made to her office.  Yet the legal wizardry of the Defendant has yet again skirted the accountability for its wrongdoing.  Perhaps this Court will then allow the Complaint to be amended to include the discrimination of ADA.

[Record Document 40, p.3].  The Court denies Plaintiff's request to amend his complaint for a third time and in the middle of summary judgment briefing.  While "the Court should freely give leave [to amend] when justice so requires," failure to effect proper service and to keep abreast of the status of one's cases is not good cause to upset the scheduling order at this late hour, and it would not serve to promote justice. Fed. R. Civ. P. 15(a)(2).

production by offering affirmative evidence in the form of materials in the record,

including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials proving that the non-moving party

cannot show a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(a).  When ruling

on a motion for summary judgment, the Court evaluates the evidence in the light most

favorable to the nonmovant and does not weigh evidence or judge credibility.  EEOC v.

Chevron Phillips Chem. Co., 570 F.3d 606, 615 (5th Cir. 2009).  A genuine dispute for

trial exists when a rational trier of fact looking at the record could find for the non-

moving party.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Co., 475 U.S. 574, 586-

87 (1986); Wallace v. Tex. Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations

omitted).

## III.   Analysis[4]

### A.   The Compromise Agreement

Defendants first argue that Mr. Mathis settled the FMLA discrimination and

retaliation claims when he agreed to the compromise offered during his workers

compensation proceeding.  The compromise states that Mr. Mathis agrees to settle all

---

[4] The Court extended M. Mathis' deadline for filing an opposition to the motion for summary judgment.  [Record Document 39, p.1].  Mr. Mathis, however, filed his response six days after the extended deadline.  [Record Document 40].  Accordingly, Defendants contend the Court should treat their motion as unopposed.  As Mr. Mathis is representing himself pro se and the slight delay caused little if any prejudice to Defendants, the Court will consider the arguments made in his opposition.

causes of action "resulting from" all accidents sustained by him while he was employed

at BOOMTOWN, that is to say:

> any and all causes and rights of action whatsoever that EMPLOYEE may or
> might have and to which EMPLOYEE may be entitled, known and unknown,
> anticipated and unanticipated under the Louisiana Worker's Compensation
> Law . . . and any and all other laws in any way resulting from or to result
> from the accidents that EMPLOYEE complains of herein and any and all
> other accidents sustained by EMPLOYEE in the past arising out of or
> occurring during the course of his employment with EMPLOYER . . .

[Record Documents 35-8, p.7].  Defendants argue that while Mr. Mathis reserved his

rights to "EEOC claims" and "unemployment claims," he did not reserve his right to

pursue FMLA claims.  Mr. Mathis does not contest that his FMLA claims "resulted from"

his workplace accident.  Rather, he argues that because his unemployment claims

turned on what he calls his "FMLA defense," the term "unemployment claims" in the

compromise necessarily includes any FMLA claims he brings here:

> Discussion of FMLA derives from the claims of the unemployment tribunal.
> My defense–or "claims"—during the unemployment hearing were that the
> Defendant had violated FMLA.  Those were my "claims". [sic] And so when
> it was handwritten into the Agreement that I reserve the right of
> unemployment "claims", [sic] the discussion of FMLA were [sic] therefore
> cast into the protection of this reserved right.

[Record Document 40, p.5].[5]  In support, he cites to his brief before the Louisiana Board

of Review and his state court petition.  In both documents he discusses his and

---

[5] Mr. Mathis does not seriously contest the enforceability of the settlement
agreement apart from arguing that the Boomtown has not yet performed.  [Record
Document 40, p.5].  No competent summary judgment evidence has been provided to
support this claim, however, and Mr. Mathis has failed to show that Boomtown's alleged
failure to perform thus far constitutes a breach of the agreement, let alone a material
breach.  He has therefore failed to raise a genuine question of material fact concerning
the agreement's enforceability.

Boomtown's compliance with the provisions of the FMLA, but neither document contains

any affirmative evidence.

The Court finds that the compromise language unambiguously covers the FMLA

claims Mr. Mathis brings here.  "When the words of a contract are clear and explicit and

lead to no absurd consequences, no further interpretation may be made in search of the

parties' intent."  La. Civ. Code art. 2046; see also Hudson v. Progressive Sec. Ins. Co., 1

So.3d 627, 632 (La. App. Ct. 2008) ("The compromise instrument is governed by the

same general rules of construction applicable to contracts") (citing Brown v. Drillers,

Inc., 639 So.2d 741 (La. 1994)).  The agreement clearly states that Mr. Mathis

> intend[s] this to be a compromise and full settlement of . . . any and all
> causes and rights of action whatsoever that [Mr. Mathis] may or might
> have . . . under the Louisiana Worker's Compensation Law . . . and any
> and all other laws in any way resulting from or to result from the accidents
> that [Mr. Mathis] complains of herein and any and all other accidents
> sustained by [Mr. Mathis] in the past arising out of or occurring during the
> course of his employment with [Boomtown] . . .

[Record Document 35-8, p.7].  There can be no question, and Mr. Mathis does not

contest, that this language is broad enough to cover the FMLA claims brought here.

Furthermore, the handwritten language providing for the reservation of Mr. Mathis' right

to bring unemployment claims and his right to continue to prosecute his EEOC charge do

not cover his FMLA claims.  Even assuming that Mr. Mathis intended the words

"unemployment claims" to refer to the FMLA claims brought here, the unambiguous

language of the contract controls.  "The words of a contract must be given their

generally prevailing meaning.  Words of art and technical terms must be given their

technical meaning when the contract involves a technical matter."  La. Civ. Code art. 2047.  The term "unemployment claims" is clear and explicit.  It refers to claims for benefits paid by the state, pursuant to La. R.S. 23:1601 et. seq., to qualified individuals who have lost their jobs.  The FMLA, by contrast, entitles the eligible employee of a covered employer to take unpaid leave for a certain amount of time per year if "the employee has a serious health condition that makes [him or her] unable to perform the functions of [his or her] position[.]"  Bocalbos v. Nat'l W. Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998) (quoting 29 U.S.C. § 2612(a)(1)(D)) (internal quotation marks omitted).  The Act also prohibits employers from interfering with, restraining, or denying an employee's rights, and from discriminating or retaliating against an employee for exercising his or her FMLA rights.  Bocalbos, 162 F.3d at 383.  The two types of claims spring from entirely separate sources of law and provide entirely different rights and remedies.  Regardless of whether FMLA issues might arise during the adjudication of an unemployment claim, no reasonable person reading the words "unemployment claims" would think that the parties who wrote it intended it to refer to FMLA claims.[6]  Because the language of the compromise clearly and explicitly manifests the intent of the parties

---

[6] Mr. Mathis argues that because "it was the Defendant that had insisted that only matters that pertained to workmans' [sic] compensation be addressed" in the settlement, his FMLA claims must fall outside of the scope of the agreement.  [Record Document 40, pp. 2, 6].  Assuming that such a statement was made, however, it does not affect that fact that the language of the agreement is unambiguous and therefore must be interpreted without the aid of additional evidence.  La. Civ. Code art. 2046.

to settle Mr. Mathis' FMLA claims against Boomtown, those claims must be dismissed.[7]

**B.      The Merits of the FMLA Claims**

Even if the settlement were not valid, Mr. Mathis has failed to make out a prima

facie case for discrimination or retaliation under the FMLA.  To make out a discrimination

or retaliation claim, he must show "that: (1) he is protected under the FMLA; (2) he

suffered an adverse employment decision; and either (3a) that [he] was treated less

favorably than an employee who had not requested leave under the FMLA; or (3b) the

adverse decision was made because of [his] request for leave." Bocalbos, 162 F.3d at

383.  If Mr. Mathis succeeds in making a prima facie case, the burden shifts to

Defendants to articulate a legitimate nondiscriminatory or nonretaliatory reason for his

termination.  Id.  Once Defendants have done so, Mr. Mathis must offer sufficient

evidence to raise a genuine question of fact regarding whether Defendants' stated

_____

[7] Mr. Mathis' two remaining arguments on this point merit little discussion. Citing
La. Civ. Code art. 7, he argues that his FMLA rights are unwaivable.  [Record Document
40, pp. 5-6].  Article 7 reads: "Persons may not by their juridical acts derogate from
laws enacted for the protection of the public interest. Any act in derogation of such
laws is an absolute nullity."  The article's comments make clear that "a private person
may renounce a right or privilege unless renunciation is expressly or impliedly
forbidden, affects the rights of others, or is contrary to public good." La. Civ. Code art.
7, comment (c); see also Lafayette Prof'l Firefighters Ass'n v. Lafayette City-Parish
Consol. Gov't, 971 So.2d 487, 490 n.4 (La. App. Ct. 2007) (La. Civ. Code art. 7 does not
interfere with the freedom to contract on all matters not forbidden by law).  Mr. Mathis
has not shown how his decision to renounce his FMLA claims is expressly or implicitly
forbidden by law, notwithstanding his unsupported contention that Congress made
FMLA rights unwaivable, affects the rights of others, or is contrary to the public good.
There is nothing extraordinary about the settlement of FMLA claims that would remove
them from the purview of the codal articles governing compromises.  See Folse v. IMC-
Agrico, Civ. A. No. 95-1849, 1996 WL 517708, at *1-2 (E.D. La. Sept. 12, 1996)
(settlement of FMLA claim is enforceable under Louisiana Civil Code Article 3071).

reason is a pretext for discrimination or retaliation.  Id.

Assuming for the sake of argument that Mr. Mathis has made out a prima facie case, Defendants have put forward a legitimate nondiscriminatory and nonretaliatory reason for his termination—namely, that he was absent from work for approximately two months and that he never submitted the forms that were necessary in order for him to take leave during that time.  The burden now shifts to Mr. Mathis to put forward evidence that this reason was pretextual.  His argument appears to be either that he actually submitted the required forms or that merely requesting FMLA leave entitled him to received an answer regarding whether Boomtown would grant the leave.  [Record Document 40, pp. 8-10].  In either case, he implies that since Defendants did not follow the dictates of the FMLA, their decision to terminate him must have retaliatory or discriminatory.  Mr. Mathis, however, has offered absolutely no evidence to support his arguments.  The Court can find nothing in the materials he has submitted, or that Defendants have submitted, that tends to show that the decision to terminate his employment was pretextual.  In particular, Mr. Mathis has presented no evidence, apart from his own allegations in this and other cases, that he submitted the required forms and no legal support for his claim that Defendants' actions before his termination violated the FMLA in any way.  Because Mr. Mathis has failed to put forward any evidence of pretext, his FMLA claims against all Defendants must be dismissed.[8]

**C.    Review of the ALJ's Decision**

---

[8] Mr. Mathis has also failed to point to any evidence showing that any of the Defendants interfered with his attempt to take FMLA leave.

Mr. Mathis' only remaining claim is his request that this Court "determine whether the Claim made by BOOMTOWN to the Unemployment Court is in fact a true Complaint and merits the actions taken by BOOMTOWN and the Unemployment Court." [Record Document 1, p.3].  He has filed an appeal in state district court regarding the Louisiana Review Board's ruling upholding the ALJ's decision.  The Court does not know the status of that case.

The Court always has an obligation to determine whether it has subject matter jurisdiction.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) ("subject-matter delineations must be policed by the courts on their own initiative"); Stockman v. Fed. Election Comm'n, 138 F.3d 144, 151 (5th Cir.1998) (without subject matter jurisdiction, a federal court lacks the power to adjudicate claims).  Mr. Mathis appears to argue that federal subject matter jurisdiction is present merely because the FMLA is a federal statute:

> FMLA is a federal law enacted by Congress.  Thus, this Court, a federal court, is the "appropriate forum" for this matter.  It's [sic] this Court, in regards to FMLA, that is the most "appropriate" jurisdiction to examine the issues here on FMLA.

[Record Document 40, p.3] (emphasis in original); see also [Record Document 1, p.1] ("The action involves application of the Family and Medical Leave Act. This Court has jurisdiction of the action.").  That the unemployment law adjudication may have involved an issue of federal law—namely, whether Mr. Mathis complied with the medical certification requirement of the FMLA—does not necessarily give this Court federal question jurisdiction.  28 U.S.C. § 1331 provides that "[t]he district courts shall have

13

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States." Whether an action "arises" under the laws of the United States is

determined by the well-pleaded-complaint rule. Gilbert v. Donahoe, --- F.3d ---, 2014

WL 1704129, at *6 (5th Cir. 2014). Under this rule, a claim "arises under federal law

when the plaintiff's statement of his own cause of action shows that it is based upon

federal law or the Constitution." Id. (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S.

1, 6 (2003)) (internal quotation marks omitted). Even if a well-pleaded complaint does

not state a federal cause of action, however, federal question jurisdiction may still exist

if:

> (1) resolving a federal issue is necessary to resolution of the state-law
> claim; (2) the federal issue is actually disputed; (3) the federal issue is
> substantial; and (4) federal jurisdiction will not disturb the balance of
> federal and state judicial responsibilities.

Hughes v. Chevron Philips Chemical Co. LP, 478 Fed. App'x 167, 170 (5th Cir. 2012)

(quoting Singh v. Duane Morris, LLP, 538 F.3d 334, 338 (5th Cir. 2008)); see also Grable

& Sons Metal Prod., Inc. v. Darue Eng. & Mfg., 545 U.S. 308, 312-14 (2005).

Mr. Mathis has failed to demonstrate that federal question jurisdiction exists

under either the well-pleaded complaint rule or the Grable factors. Mr. Mathis seeks

review of his disqualification from receiving unemployment benefits, which is clearly a

state law claim. Furthermore, he has failed to show that resolution of a substantial

federal issue is necessary in order to adjudicate this claim. The only federal issue that

Mr. Mathis raises is whether he turned in the FMLA medical certification or its equivalent

in a timely manner. [Record Document 1, p. 5]. Whether or not he submitted

documents in a timely manner is simply not a substantial issue; nor is it actually disputed.  Mr. Mathis has failed to offer any evidence in support of his allegation that he complied with Boomtown's request for medical certification.  Whether or not the failure to turn in the documentation disqualifies Mr. Mathis for state unemployment benefits is a question for the state.  Accordingly, the Court finds that Mr. Mathis' unemployment claim does not present a federal question and this court lacks subject matter jurisdiction over that claim.

## IV.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment be and hereby is **GRANTED.**  Mr. Mathis' claims against Defendants are **DISMISSED with prejudice**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 23rd day of June, 2014.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE